**David W. Criswell**, OSB No. 925930
dcriswell@balljanik.com
BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon  97204-3219
Phone: 503-228-2525
Fax: 503-295-1058

Attorneys for PremierWest Bank

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF OREGON

| In re | Case No. 10-62852-fra11 |
|---|---|
| **Pioneer Village Investments, LLC**, an Oregon limited liability company, | **PREMIERWEST BANK'S OBJECTION TO DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT DATED JANUARY 25, 2011** |
| Debtor. | |

PremierWest Bank ("PremierWest" or the "Bank") submits the following objection to the Debtor's Second Amended Disclosure Statement Relating to the First Amended Plan of Reorganization filed by the Debtor (Document No. 125).

A.    <u>Debtor's Plan is Unconfirmable as a Matter of Law Due to an Unlawful Post Confirmation Injunction.</u>

The Second Amended Disclosure Statement highlights an injunction buried in the Debtor's Plan (and not discussed in its prior Disclosure Statement) against all creditors from commencing or continuing any action against "Affiliates"—defined as Excelsior Developments, Farmington Centers, Inc and all interest holders of the Debtor[1]—from "any judgments, claims or

_____

[1] The Second Amended Disclosure Statement does not name the interest holders of the Debtor.  The Second Amended Disclosure Statement must be modified to identify the beneficiaries of the proposed extraordinary injunction.

Page 1 -  **PREMIERWEST BANK'S OBJECTION TO SECOND AMENDED DISCLOSURE STATEMENT**

1    causes of action that arise out of or relate to Claims against the Debtor or the estate . . ." (the

2    "Non-Debtor Injunction").  Second Amended Disclosure Statement, at 20-21.

3         According to the Second Amended Disclosure Statement, the Non-Debtor Injunction

4    specifically includes the "suit filed by PremierWest Bank in Jackson County Circuit Court

5    bearing case no. 101593E3."  In that Jackson County case, PremierWest Bank has pending

6    claims against non-debtor third party guarantors Excelsior Development Company, LLC, Jeffrey

7    L. Chamberlain, Donna Chamberlain, Theodore J. Chamberlain, and Faye Chamberlain, on

8    account of the absolute and unconditional guarantees by those parties of the obligations of the

9    Debtor to the Bank.  The Non-Debtor Injunction also enjoins holders of resident deposit claims

10   in this case from pursuing claims against Farmington Centers, Inc.

11        A Court should not approve a disclosure statement where it describes a plan which is

12   fatally flawed and thus incapable of confirmation.  In re 266 Washington Associates, 141 B.R.

13   275 (Bankr. E.D.N.Y. 1992); In re Cardinal Congregate I, 121 B.R. 760 (Bankr. S.D. Ohio 1990)

14   (Court should not approve disclosure statement when it is impossible for debtor to confirm plan

15   described by disclosure statement); In re Pecht, 57 B.R. 137, 139 (Bankr. E.D. Va. 1986).

16        Courts in these cases adopt a "silver bullet" test and deny approval of the disclosure

17   statement where creditors point out insurmountable confirmation objections.  In such cases, the

18   Court denies approval of a disclosure statement to prevent the expenditure of time, money and

19   effort on a plan which on its face is doomed to defeat at confirmation.

20        The Debtor's Plan here suffers from just such a fatal legal defect—the proposed Non-

21   Debtor Injunction.  To obtain confirmation of a plan of reorganization, the plan proponent must

22   among other things show that it "complies with the applicable provisions of this title."  11 U.S.C.

23   § 1129(a)(2).  The Debtor's Plan does not comply with the "applicable provisions of this title,"

24   namely Code Section 524(e).

25        Section 524(e) of the Code provides that "except as provided in subsection (a)(3) of this

26   section, discharge of a debt of the debtor **does not affect the liability of any other entity on, or**

Page 2 -  **PREMIERWEST BANK'S OBJECTION TO SECOND AMENDED**
          **DISCLOSURE STATEMENT**

1   **the property of any other entity for, such debt.**"  To "affect" means "to act upon; influence;

2   change; enlarge or abridge . . ." *Black's Law Dictionary*.  The Plan certainly acts upon,

3   influences, changes and abridges liability of any other entity on such discharged debt.  The plain

4   language of section 524(e) states that the discharge of the Debtor shall not affect the liability of

5   any other entity (here Excelsior, Farmington, and guarantors) to both the Bank and resident

6   deposit creditors for claims such creditors may have against those third parties.

7       Following the filing of the Debtor's petition for relief under title 11, the automatic stay

8   enjoined the Bank from pursuing its rights as a secured creditor to foreclose on the property

9   which secures the Bank's claim.  Similarly, resident deposit creditors have been stayed from

10  pursuing claims against the Debtor to recover their deposits.  However, the stay created by

11  section 362 does not apply to non-debtor parties or their properties.  In re Chugach Forest

12  Products, Inc., 23 F.3d 241, 246 (9th Cir. 1994).  Even though the automatic stay does not apply

13  to third parties or their properties, Bankruptcy Courts in certain circumstances have temporarily

14  stayed third parties from collection against non-debtors under section 105(a) of the Bankruptcy

15  as an order "necessary . . . to carry out the provisions of this title [title 11]."  11 U.S.C. § 105(a).

16      The power of the Bankruptcy Court to issue injunctions as a "necessary" order under

17  Section 105(a) is not boundless.  As stated by the Fifth Circuit, section 105 does not "authorize

18  the bankruptcy courts to create substantive rights that are not available under applicable law, or

19  constitute a roving commission to do equity."  United States v. Sutton, 786 F.2d 1305, 1308 (5th

20  Cir. 1986).  Bankruptcy Courts are not authorized, "in the name of equity, to make wholesale

21  substitution of underlying law controlling the validity of creditor entitlements, but are limited by

22  what the Bankruptcy Code itself provides."  Raleigh v. Ill. Dept. of Revenue, 120 S.Ct. 1951,

23  1957 (2000).

24      The Ninth Circuit Court of Appeals has sharply limited the scope of injunctions that are

25  proper for a bankruptcy court to issue in favor of non-debtor third parties.  In re American

26  Hardwoods, 885 F.2d 621 (9th Cir. 1989), the Ninth Circuit ruled that the power of the

Page 3 -  **PREMIERWEST BANK'S OBJECTION TO SECOND AMENDED
            DISCLOSURE STATEMENT**

bankruptcy court to issue an injunction in favor of a third party ended upon confirmation of a plan.  In <u>American Hardwoods</u>, the debtor sought entry of a post-confirmation injunction which enjoined creditor Deutsche Credit from enforcing a state court judgment against the Keelers, nondebtor guarantors of the debtor's liabilities to Deutsche.  Deutsche moved for summary judgment and the Oregon Bankruptcy Court granted the motion, holding that it lacked the power to order a permanent injunction against non-debtors.

On appeal, the District Court of Oregon held that "its power under section 105(a) to order the relief sought by American ends at confirmation of the plan."  885 F.2d at 625.  On appeal to the Circuit, the Ninth Circuit held that "the district court did not err in concluding that it lacked power to enjoin Deutsche permanently from enforcing its state court judgment against the Keelers.  The Ninth Circuit concluded that "the specific provisions of section 524 displace the court's equitable powers under section 105 to order the permanent relief sought by American." <u>Id</u>. at 626.

The Ninth Circuit restated its prohibition against post-confirmation third party injunctions in <u>In re Lowenchuss</u>, 67 F.3d 1394 (9th Cir. 1995).  And more recently the Ninth Circuit stated that the "maximum" injunctive relief against a nondebtor is "until confirmation of a reorganization plan." <u>In re Excel Innovations, Inc.</u>, 502 F.3d. 1086, 1095 (9th Cir. 2007).  This is consistent with the holding of <u>American Hardwoods</u> that the "specific provisions of Section 524 displace the Court's equitable powers under Section 105" once an order confirming a plan is entered.

The Ninth Circuit Bankruptcy Appellate Panel has directly refuted and rejected without qualification attempts to side-step <u>American Hardwoods</u> with "temporary" injunctions which do not permanently discharge the liability of a co-debtor or guarantor.  In <u>In re Rohnert Park Auto Parts, Inc.</u>, 113 B.R. 610, 614 (9th Cir. BAP 1990), the debtor proposed a plan which enjoined a creditor from taking any action against a co-debtor for five years until the payments under the

Page 4 -  **PREMIERWEST BANK'S OBJECTION TO SECOND AMENDED DISCLOSURE STATEMENT**

1   plan were completed.  The Bankruptcy Appellate Panel (BAP) reversed an order of the

2   Bankruptcy Court confirming the debtor's plan.

3       The BAP held that the plan violated Section 524(e) and should not have been confirmed.

4   The Court explained that

5
6       " . . . Section 7.05 of the Plan affects the liability of the co-debtor
        as to the debt owed to Seaport . . . <u>Although Section 7.05 does not
        release the co-debtors from liability, the stay in Section 7.05 does
7       affect the liability of the co-debtors of the debtor as to a debt
        owned by Rohnert to Seaport.</u>  Seaport is prohibited from
8       proceeding against the co-debtors until the plan is completed.  <u>This
        affects the liability of the co-debtors for five years.</u>"

9
10  <u>Id</u>. at 616 (emphasis supplied).

11      The injunction here provides that it remains in effect "until all of the payments

12  required to be made under this Plan have been paid, and all Allowed Claims have been fully

13  satisfied pursuant to this Plan at which time the Enforcement Injunction shall be terminated."

14  The Debtor's Plan provides that the Bank's claim will be paid by the "fifth anniversary of the

15  Effective Date."  Plan, Section 6.1.1.  The Debtor's Plan thus provides for an injunction prohibiting

16  creditors from pursuing third-party obligors for five years.  This five-year injunction is the same

17  length as the one that the BAP found unlawful in <u>Rohnert Park</u>.  The BAP correctly followed

18  <u>American Hardwoods</u> and ruled that although the injunction in <u>Rohnert Park</u> did not release or

19  discharge the co-debtors from liability, it did "affect" the liability of such third parties in violation

20  of section 524(e) by halting collection proceedings for a period of time following plan

21  confirmation.  The Court should deny approval of the Debtor's Disclosure Statement based on the

22  violation of Section 524(e).

23      Alternatively, to the extent that the Court defers ruling on the non-Debtor Injunction until

24  the confirmation hearing, the Debtor's Disclosure Statement must clearly alert resident deposit

25  creditors that they will be enjoined from pursuing claims against Farmington Center, Inc. for five

26  years.  In contrast, under the Bank's competing plan (which is undergoing revisions as of this

Page 5 -  **PREMIERWEST BANK'S OBJECTION TO SECOND AMENDED
          DISCLOSURE STATEMENT**

1   date), the Liquidating Trustee will pursue claims against Farmington for damages related to

2   Farmington's misuse of resident deposit claims, for the benefit of the class of resident deposit

3   holder claimants.  That is a material difference between the Debtor's plan (which seeks to protect

4   Farmington) and the Bank's plan which will provide for another avenue for recovery for resident

5   deposit claims from third party Farmington in addition to the carve-out by the Bank.

6       **B.**      **The Disclosure Statement Does Not Reflect the Amount of the Bank's**

7   **Secured Claim or Disclose Debtor's Valuation of the Property.**

8           The Debtor appears to have abandoned its efforts to sell the cottages separately

9   from the remainder of the Pioneer Village facility.  The new chapter 11 exit is premised on

10  obtaining a "priming lien" to secure a $500,000 loan from "John Tennant, an investor in other

11  facilities managed by Farmington Centers, Inc."  Second Amended Disclosure Statement at 14.

12  The Disclosure Statement states that the $500,000 in exit financing shall "be used for payment of

13  any and all expenses and obligations owed upon confirmation, to fund the initial payment to

14  entrance fee deposit holders, to pay the 2008-9 real estate property taxes and a reserve for

15  potential emergency matters which may arise in the future."

16          A "priming lien" under Section 364(d) may not be granted unless the Debtor, among

17  other things, can establish that the Bank is adequately protected following the granting of such

18  lien.  Presumably, in an attempt to establish adequate protection, the Debtor will try to show that

19  the Bank has a significant equity cushion.  The Debtor, in its Schedules in Bankruptcy, valued

20  the Property at $16,600,000.  The Debtor's Disclosure Statement should advise creditors how the

21  Debtor values the Property for purposes of the Plan and the ancillary priming lien motion.

22          The Debtor's Disclosure Statement and accompanying Plan do not state the Allowed

23  Amount of the Bank's Secured Claim but the five year projections attached to the Second

24  Amended Disclosure Statement (Exhibit A) fix the "balance" of the Bank's claim at

25  $11,739,000.  If the Debtor contends that the Bank is oversecured, then the Debtor's Disclosure

26  Statement and cash flow projections must be adjusted to account for a Bank claim far in excess

1    of $11,739,000.  If the Bank is oversecured, the Bank's claim as of February 8, 2011, exceeds

2    $13,900,000 (not including pre-petition or post-petition attorneys' fees).  Given additional

3    default interest accrual over and above the continued adequate protection payments and a plan

4    effective date of May 1, 2011, the Bank will be owed a higher amount as of that date.

5        Default interest must be included in the Bank's allowed secured claim if the Bank is

6    oversecured.  General Electric Capital Corporation v. Future Media Productions, Inc., 530 F.3d

7    1178 (9th Cir. 2008), amended by 536 F.3d 969 (9th Cir. 2008) (allowing oversecured creditor

8    GEEC to recover the default rate of interest).

9        The Bank and other creditors are entitled to know why the Debtor believes the Bank's

10   claim is somehow limited to the amount of principal outstanding as of the Petition Date.  The

11   Debtor must modify its Disclosure Statement to explain why it contends the Bank's claim is only

12   $11,739,000.  The Debtor's plan is premised on capitalizing the entire amount of the Bank's

13   claim and paying the restructured Bank debt over time following confirmation.  The Debtor must

14   also provide cash flow projections which contain the higher amount the Bank contends is owing

15   to show the impact on the feasibility of the Debtor's Plan.

16       If on the other hand, the Debtor contends that the Bank is undersecured, the Bank is

17   entitled to know that now given that the Bank must make an election under 1111(b) of the

18   Bankruptcy Code by the conclusion of the hearing on the Debtor's Disclosure Statement, unless

19   such time is extended by the Court.

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

Page 7 -  **PREMIERWEST BANK'S OBJECTION TO SECOND AMENDED
          DISCLOSURE STATEMENT**

1                                   **<u>Conclusion</u>**

2          The Bank asks that the Court decline to approve the Debtor's Second Amended

3     Disclosure Statement unless it is modified to (1) remove the Non-Debtor Injunction and (2)

4     address the other issues discussed above.

5          DATED:  February 8, 2011          BALL JANIK LLP

6
                                              By: /s/ David W. Criswell
7                                                 David W. Criswell, OSB No. 925930

8
                                                  Attorneys for PremierWest Bank
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Page 8 -  **PREMIERWEST BANK'S OBJECTION TO SECOND AMENDED
          DISCLOSURE STATEMENT**

1

## CERTIFICATE OF SERVICE

2    I hereby certify that I served copies of the foregoing **PREMIERWEST BANK'S**

3    **OBJECTION TO DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT**

4    **DATED JANUARY 25, 2011** on the following parties **by CM/ECF**:

5    • DOUGLAS P CUSHING    doug.cushing@jordanschrader.com,
6       deborah.soloway@jordanschrader.com;Litparalegal@jordanschrader.com

7    • R CRAIG McMILLIN    rcm@integraonline.com, cmfiling@hotmail.com

8    • JENNIFER L PALMQUIST    jpalmquist@nwlawfirm.com

9    • MATTHEW SUTTON    msutt@uci.net

10   • US Trustee, Eugene    USTPRegion18.EG.ECF@usdoj.gov

11   • CAROLYN G WADE    carolyn.g.wade@doj.state.or.us

12   • C CASEY WHITE    ckcwhite@msn.com

13   and on the following parties by **mailing** a full, true and correct copy in a sealed first-class

14   postage prepaid envelope, addressed to the parties listed below, and deposited with the United

15   States Postal Service at Portland, Oregon on the date set forth below:

16

17   Susan Casto                          Peggy P. Eccles Revocable Living Trust
     888 Twin Creeks Crossing             c/o Melvin D. Ferguson
18   Central Point, OR 97502              541 Walnut Ave
                                          Klamath Falls, OR 97601
19
     Irene Kartsounis                     Henry C. Winsor
20   c/o Matthew Sutton Attorney          1601 Veranda Park Dr #2
     205 Crater Lake Avenue               Medford, OR 97504
21   Medford, OR 97504

22

23        DATED:  February 8, 2011

24                                          /s/ Stuart Wylen
                                          Stuart Wylen, Legal Secretary
25

26

Page 1 -  **CERTIFICATE OF SERVICE**

::ODMA\PCDOCS\PORTLAND\749439\4